# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | Case No. 2:25-cv-01069 |
| v. | : | |
| CONTENTS OF SPACE COAST CREDIT UNION, ACCOUNT NUMBER X3369, IN THE NAME OF PAQUETES Y PROGRAMAS HARDWARE Y SOFTWARE, INC., | : : : | |
| Defendant. | : | |

## VERIFIED COMPLAINT FOR FORFEITURE IN REM

Plaintiff, United States of America, by its undersigned counsel, alleges the following for its action against the defendant in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure.

## NATURE OF THE ACTION

1. This is a civil action *in rem* brought to enforce 18 U.S.C. § 981(a)(1)(A), which provides for the forfeiture to the United States of the following:

> Any property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of this title, or any property traceable to such property.

## THE DEFENDANT IN REM

2. The defendant is the Contents of Space Coast Credit Union, Account Number X3369, in the Name of Paquetes Y Programas Hardware Y Software, Inc. On or about September 21, 2020, the Internal Revenue Service, Criminal Investigation seized funds in the amount of

$196,055.32 from Space Coast Credit Union in Melbourne, Florida, pursuant to a federal seizure warrant. The United States has deposited the defendant into the Treasury Suspense Account, where it will remain during the pendency of this action.

## JURISDICTION AND VENUE

3. Plaintiff brings this action *in rem* in its own right to forfeit and condemn the defendant under 18 U.S.C. § 981(a)(1)(A). This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345 and over an action for forfeiture under 28 U.S.C. § 1355(a).

4. This Court has *in rem* jurisdiction over the defendant under 28 U.S.C. § 1355(b)(1)(A) because the acts or omissions giving rise to the forfeiture occurred in the Southern District of Ohio.

5. Venue is proper in this district under 28 U.S.C. § 1355(b)(1)(A) because the acts or omissions giving rise to the forfeiture occurred in the Southern District of Ohio.

## BASIS FOR FORFEITURE

6. The defendant is subject to forfeiture under 18 U.S.C. § 981(a)(1)(A) because the property was involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 1957, and 1960, or a conspiracy to commit such offenses, or is property traceable to such property.

## FACTS

7. Beginning in approximately January 2015, as part of ongoing investigations into narcotics trafficking and related Black-Market Peso Exchange[1] money laundering schemes,

---

[1] Narcotics traffickers accumulate large amounts of cash proceeds from unlawful sales of controlled substances in the United States. Therefore, narcotics traffickers devise various methods to remit or launder their proceeds to suppliers located in Colombia, Mexico, and/or other South American countries to create the appearance of legitimacy as to those proceeds. The Black-Market Peso Exchange ("BMPE") is a trade-based money laundering technique commonly used by

2

undercover agents and/or confidential sources accepted contracts to pick up bulk cash, derived from the unlawful distribution of controlled substances, on more than one hundred occasions.

8. The investigators determined that those acting on behalf of a business named Paquetes Y Programas Hardware Y Software, Inc. ("Paquetes") used the defendant account and other Paquetes accounts to facilitate BMPE transactions.

9. Luis Fernando Marin Rodriguez ("Marin") incorporated Paquetes in the State of Florida on November 14, 2014.

10. Paquetes is owned and/or controlled by Marin and Lina Maria Meneses ("Meneses"), and they operated the business out of their residence in Pembroke Pines, Florida.

11. Marin and Meneses served as Co-Presidents of Paquetes, and Ruben Vargas, Sr. ("Vargas") served as its Director.

12. Both Marin and Meneses were born in Colombia, and Vargas purportedly owned a similar business named Paquetes Y Programas in Colombia.

13. Over time, Marin established multiple bank accounts in the name of Paquetes, including accounts at Bank of America, JPMorgan Chase Bank, Wells Fargo Bank, Citibank, and Space Coast Credit Union.

14. Although Paquetes held itself out as a wholesaler of computer hardware and software, it in fact operated as a money transmitting business and laundered proceeds obtained

---

narcotics traffickers in Colombia and Mexico. It involves narcotics traffickers, through a third party, converting illicitly obtained U.S. dollars in the United States and elsewhere for local currencies without attracting the attention of law enforcement. In a common scheme, a BMPE broker arranges to have narcotics proceeds picked up by a member of the BMPE broker's organization. These money pickups usually will occur between two people who have never met and often involve several hundreds of thousands of dollars in narcotics proceeds. Following the money pickup, the BMPE broker generally directs that the cash be forwarded to an exporter in the United States. This frequently is accomplished by remitting those funds to the exporter through a third party's bank account.

from the unlawful distribution of controlled substances.

15. From an unknown date but no later than in and around January 2015 through on or about September 22, 2020, in the Southern District of Ohio and elsewhere, Marin knowingly conducted, controlled, managed, supervised, directed, and owned all or part of Paquetes, an unlicensed money transmitting business.

16. Paquetes was not licensed to operate a money transmitting business in the State of Florida or the State of Ohio, and Paquetes failed to comply with the money transmitting business registration requirements under federal law.

17. Paquetes affected interstate and foreign commerce in some manner or degree.

18. Through its banking activity, Paquetes helped to conceal and disguise the nature, source, ownership, and control of proceeds of specified unlawful activity, that is, the unlawful distribution of controlled substances or the control or ownership of an unlicensed money transmitting business.

19. Paquetes used domestic bank accounts at Bank of America, account number ending in 7620; JPMorgan Chase Bank, account number ending in 1015; Wells Fargo Bank, account number ending in 5520; Citibank, account number ending in 4889; and Space Coast Credit Union, account number ending in 3369 (the defendant) to make narcotics proceeds appear to be from legitimate sources and to move those proceeds through the financial system.

20. Between January 2015 and September 2020, bank accounts in the name of Paquetes received more than $12.6 million.

21. The Paquetes accounts acted as pass-throughs, that is, the funds were held for a brief time and then nearly all the funds were sent by wire transfer out of the account mainly to the same twelve to fifteen accounts held by various individuals and entities.

22. After receiving funds into a Paquetes account, Marin typically transferred the funds out of the account within 24 or 48 hours.

23. Most of the deposited funds that were not immediately wire transferred out of the Paquetes accounts appear to have been used to pay personal expenses or were transferred to other bank accounts controlled by Marin and/or Meneses.

24. For example, the expenses included payments to McCarthy High School, Broward University, Miami/Dade property taxes, Broward County taxes, Costco, Walgreens, Wal-Mart, State Farm, Publix Supermarket, Shell, Metro PCS, Chevron, Cinemark Theatres, restaurants, Marshal's, Old Navy, Netflix, Steam Games, and Sirius, among other expenses.

25. Paquetes accounts at Bank of America, account number ending in 7620; JPMorgan Chase Bank, account number ending in 1015; Wells Fargo Bank, account number ending in 5520; Citibank, account number ending in 4889; and Space Coast Credit Union, account number ending in 3369 (the defendant) did not receive deposits from credit card receipts.

26. Paquetes received wire transfers from all around the United States. Some of these transactions came from undercover law enforcement operations.

27. More than $3.5 million in cash drug proceeds was picked up by undercover law enforcement officers in various cities, was deposited into undercover law enforcement accounts, and was transferred to bank accounts in the name of Paquetes.

28. The undercover agents and confidential sources involved in these pickups did not negotiate the purchase of goods or services from Paquetes or conduct any other legitimate business with the company.

29. Some of the cash pickups by undercover agents occurred in the Southern District of Ohio, and some of the wire transfers were initiated in the Southern District of Ohio.

30. The effect of rapidly moving drug proceeds through businesses is to make it harder for law enforcement and financial institutions to determine the criminal source of the funds.

31. On September 15, 2020, law enforcement agents executed a search warrant at 682 NW 170th Terrace, Pembroke Pines, Florida, identified as the business location of Paquetes and residence of Marin and Meneses.

32. During the search, agents seized records related to the defendant. The records revealed the following:

    a. On or about August 12, 2020, Marin opened a business checking account number ending in 3369 in the name of Paquetes Y Programas Hardware Y Software, Inc.;

    b. Marin is identified as the President and the only signatory listed on the account;

    c. The address for the account is listed as 682 NW 170 Terrace, Pembroke Pines, Florida 33026;

    d. Paquetes is a "Corporation/LLC," identified as a "computer and hardware" business;

    e. Paquetes has been in business for approximately 13 years; and

    f. Paquetes expects to have estimated monthly cash deposits and wire transfer activity ranging from $0-$5,000.00.

33. Special Agent Stephen Blunk of the Internal Revenue Service, Criminal Investigation analyzed records from Space Coast Credit Union, related to the defendant, for the time frame of August 12, 2020, through August 31, 2020, which revealed:

    a. From the account open date through August 31, 2020, approximately

    $212,300.00 was deposited into this account.

  b. Of the total deposits, approximately $182,050.00 was from wire transfers received;

  c. The funds wire transferred into the defendant account were moved in the same manner as the funds wired into the accounts previously held by Marin and/or Meneses in the name of Paquetes at Bank of America, Chase, Wells Fargo, and Citibank;

  d. Like the previously held bank accounts, within a day or two and sometimes up to about a week later, the funds wired into this account, or a portion thereof, were then wire transferred to other business bank accounts;

  e. Specifically, on August 26, 2020, a wire transfer deposit was made into the defendant account in the amount of $45,790.00; and

  f. On August 27, 2020, two outgoing wire transfers were made from the defendant account in the amounts of $17,487.00 and $30,369.00 to businesses that had received wire transfers from at least one of the previously held Paquetes accounts at Bank of America, Chase, Wells Fargo, and Citibank.

34. In September 2020, the same pattern of incoming wire transfer deposits followed by outgoing wire transfers continued in the defendant account.

35. For example, on September 18, 2020, a wire transfer deposit was made into the defendant account in the amount of $49,750.00.

36. On September 21, 2020, two wire transfer deposits were made into the defendant account in the amounts of $35,800.00 and $20,263.00.

37. On the same day, an outgoing wire transfer was made from the defendant account in the amount of $20,263.00.

38. The last wire transfer deposit made before Space Coast Credit Union closed the defendant account was on September 22, 2020, in the amount of $43,954.00.

39. On September 15, 2020, law enforcement agents interviewed Marin, who said the following:

    a. A person approached him about paying invoices upon request. Under such agreement, Marin would receive funds from U.S. bank accounts and then send money at the other person's direction to pay invoices;

    b. Marin agreed to the arrangement;

    c. Marin did not know what the businesses were that transferred money into his account;

    d. Once the money cleared his accounts, Marin then transferred the money by wire at the other person's direction;

    e. Marin would receive 1.5% of the money;

    f. Marin opened an account at Bank of America, but the bank "red flagged" his account;

    g. Marin then opened bank accounts at JPMorgan Chase Bank and Well Fargo Bank, which were also "red flagged;" and

    h. Marin believes his bank accounts were "red flagged" due to the money coming into and out of these accounts.

40. Based on the foregoing facts, the United States asserts that the defendant, the Contents of Space Coast Credit Union, Account Number X3369, in the Name of Paquetes Y

8

Programas Hardware Y Software, Inc. in the amount of $196,055.32, was involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 1957, and 1960, or a conspiracy to commit such offenses, or is property traceable to such property. Therefore, the defendant is subject to forfeiture to the United States under 18 U.S.C. § 981(a)(1)(A).

## CLAIM FOR RELIEF

WHEREFORE, the plaintiff respectfully requests that:

(a) pursuant to Rule G(3)(b)(i), Supplemental Rules, the Clerk issue a warrant of arrest *in rem*, directing the United States to arrest and seize the defendant and to retain the same in its custody subject to further order of the Court;

(b) the Court, pursuant to Rule G(4), Supplemental Rules, direct the United States to give notice to all persons and entities having an interest in the defendant to assert, in conformity with the law, a statement of any interest they may have, including notice by publication on the official government website, www.forfeiture.gov, for 30 consecutive days;

(c) the forfeiture of the defendant to the United States be confirmed, enforced, and ordered by the Court;

(d) the Court thereafter order the United States to dispose of the defendant as provided by law; and

(e)     the Court award the United States all other relief to which it is entitled, including the costs of this action.

                Respectfully submitted,

                DOMINICK S. GERACE II
                United States Attorney

                s/Deborah D. Grimes
                DEBORAH D. GRIMES (0078698)
                Assistant United States Attorney
                Attorney for Plaintiff
                221 East Fourth Street, Suite 400
                Cincinnati, Ohio 45202
                (513) 684-3711
                Deborah.Grimes@usdoj.gov

**VERIFICATION**

I, Stephen M. Blunk, hereby verify and declare under the penalty of perjury that I am a Special Agent with the Internal Revenue Service, Criminal Investigation, that I have read the foregoing Verified Complaint for Forfeiture and know the contents thereof, and that the matters contained in the complaint are true to my own knowledge, except those matters stated to be alleged on information and belief and as to those matters, I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, and my investigation of this case.

I hereby verify and declare under the penalty of perjury that the foregoing is true and correct.

September 18, 2025
Date

STEPHEN M. BLUNK, Special Agent
Internal Revenue Service, Criminal Investigation